Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JOAQUÍN ORTIZ VELÁZQUEZ<br><br>Recurrido<br><br>v.<br><br>LIZA MÁRQUEZ GARCÍA T/C/C LISANDRA MÁRQUEZ GARCÍA<br><br>Peticionario<br><br>MYRIAM VÁZQUEZ HERNÁNDEZ Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR ELLA Y JOAQUÍN ORTIZ VELÁZQUEZ<br><br>Recurridos | TA2025CE00039 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil Núm. CA2023CV01896<br><br>Sobre: Cobro de Dinero, Desahucio, Incumplimiento de Contrato, Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Rodríguez Casillas, juez ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 26 de agosto de 2025.

Comparece ante nos, la Sra. Liza Márquez García ("señora Márquez García" o "peticionaria") mediante el recurso de *certiorari*. Solicita que revisemos y revoquemos la *Resolución Interlocutoria* dictada el 21 de mayo de 2025,[1] por el Tribunal de Primera Instancia, Sala Superior de Carolina ("TPI"), en la cual, declaró *No Ha Lugar* la solicitud de sentencia sumaria.

Examinada la totalidad del expediente, **denegamos** expedir el auto de *certiorari*.

**-I-**

El **12 de junio de 2023** el Sr. Joaquín Ortiz Velázquez ("señor Ortiz Velázquez" o "co-recurrido") instó una *Demanda* sobre

---

[1] Notificada el 27 de mayo de 2025.

desahucio en precario contra la señora Márquez García y el Dr. William Moreno Santisteban ("Dr. Moreno Santisteban").[2] En resumen, alegó que es dueño de la propiedad conocida como Edificio Vanessa, localizado en la Calle Fernández Juncos, B-5, Urb. Rosa María, Carolina, Puerto Rico. Por lo cual, le arrendó al Dr. Moreno Santisteban un local en la propiedad descrita para la operación de su oficina dental por un plazo de más de 30 años. No obstante, dicho contrato había vencido desde el año 2022.

Continuó alegando que al retirarse el Dr. Moreno Santisteban, la señora Márquez García le hizo un acercamiento para arrendar la propiedad, y aunque el contrato no se había suscrito, la peticionaria realizó los pagos de marzo, abril y mayo del 2023. No obstante, el contrato no fue efectuado, por lo que le solicitó a la peticionaria a que desalojara la propiedad. Sin embargo, esta le envió una carta en la que anejo el pago de junio 2023. Por ello, le solicitó al TPI a que ordenara el desalojo de la peticionaria de su propiedad.

Tras varios trámites, el **29 de junio de 2023**,[3] el TPI celebró una vista. En lo pertinente, surge de la *Minuta* que:

> *[E]l tribunal hace constar que no obra en el expediente la notificación citación, diligenciada a la parte demandada.*
> *Informa la licenciada Rivera que ambas partes se han comunicado y tienen la dirección de doña Liza, sin embargo, hoy se comunicó un licenciado indicando que estaría representando a la dama en el caso de cobro de dinero, pero se le pidió la dirección y la misma no fue proporcionada. Añade que de igual forma el Dr. Marrero se comunicó con su cliente y también se negó a dar la dirección, por lo que estaría haciendo las gestiones para conseguir los edictos.*
> ***Ante lo informado, el tribunal ordena continuar los procedimientos por la vía ordinaria y concede a la parte demandante hasta el 14 de julio 2023, para que presente la solicitud de emplazamiento por edicto y pueda ser evaluada por el tribunal*** [.] [4]

**En igual fecha**, el TPI emitió una *Orden*,[5] y dispuso que:

> *CONFORME CON LO DISCUTIDO EN LA VIDEOCONFERENCIA CELEBRADA HOY, EL TRIBUNAL ORDENA CONTINUAR LOS PROCEDIMIENTOS POR LA VÍA ORDINARIA Y CONCEDE A LA DEMANDANTE HASTA EL 14*

---

[2] Entrada Núm, 1 del caso *CA2023CV01896* en SUMAC.
[3] Entrada Núm. 6 del caso *CA2023CV01896* en SUMAC.
[4] *Íd.*
[5] Entrada Núm. 5 del caso *CA2023CV01896* en SUMAC.

*DE JULIO DE 2023 PARA QUE SOLICITE AUTORIZACIÓN PARA EMPLAZAR POR EDICTO A LOS DEMANDADOS.[6]*

Tras varios incidentes procesales, el **9 de septiembre de 2023** el señor Ortiz Velázquez enmendó la demanda,[7] a los fines de reclamar a la contraparte los cánones de arrendamiento adeudados, los ingresos dejados de devengar y las angustias mentales sufridas por la suma de $100,000.00.

Aceptada la enmienda por el TPI,[8] el **3 de noviembre de 2023** la señora Márquez García contestó la demanda enmendada y sometió una reconvención.[9] En esencia, negó las alegaciones sometidas, y reclamó la suma de $30,582.26 por los daños causados ante el incumplimiento del señor Ortiz Velázquez.[10]

El **17 de noviembre de 2023**, la señora Márquez García presentó una *Demanda contra Tercero*, para traer al pleito a una tercera demandada *desconocida* y la Sociedad Legal de Gananciales de dicha persona desconocida.[11]

El **30 de diciembre de 2023**, el señor Ortiz Velázquez replicó la reconvención.[12]

Así, el **18 de enero de 2024** los terceros demandados contestaron la demanda.[13]

Mediante *Orden* emitida el **18 de enero de 2024**,[14] el TPI les ordenó a las partes a que concluyeran el descubrimiento de prueba a no más tarde del 30 de abril de 2024, y a presentar, el *Informe de Conferencia con Antelación a Juicio* a no más tarde del 24 de mayo de 2024.[15]

---

[6] *Íd.*
[7] Entrada Núm. 14 del caso *CA2023CV01896* en SUMAC.
[8] Entrada Núm. 15 del caso *CA2023CV01896* en SUMAC.
[9] Entrada Núm. 22 del caso *CA2023CV01896* en SUMAC.
[10] *Íd.*
[11] Véase, Anejo titulado *Demanda Contra Tercera* de la Entrada Núm. 32 del caso *CA2023CV01896* en SUMAC.
[12] Entrada Núm. 43 del caso *CA2023CV01896* en SUMAC.
[13] Entrada Núm. 45 del caso *CA2023CV01896* en SUMAC.
[14] Notificada el 22 de enero de 2024.
[15] Entrada Núm. 47 del caso *CA2023CV01896* en SUMAC.

Concluido el descubrimiento de prueba, y luego de varios trámites procesales, el **14 de febrero de 2025** la señora Márquez García presentó una *Moción de Sentencia Sumaria*.[16] Con ella, anejó un total de 34 documentos.[17] Entre otras cosas, argumentó que no existía controversia sobre los hechos pertinentes a la violación de los deberes de conducta exigidos durante la etapa precontractual por parte del señor Ortiz Velázquez, por lo cual solicitó que se declarara con lugar la solicitud de sentencia sumaria y se condenara a la contraparte al pago de $30,582.26, más las costas, intereses y honorarios por temeridad.

En oposición, el **6 de marzo de 2025** el señor Ortiz Velázquez sometió una *Moción en Oposición de Sentencia Sumaria*.[18] Entre otras cosas, adujo que existían hechos en controversia por lo que no procedía la resolución sumaria del caso.

Trabada ahí la controversia, el **21 de mayo de 2025** el TPI dictó una *Resolución Interlocutoria*.[19] Destacó que no tomó en consideración la oposición del señor Ortiz Velázquez, dado que no cumplió con la Regla 36.3 (b) de las Reglas de Procedimiento Civil.[20] Así, esbozó que en los siguientes hechos esenciales **no existía controversia**:

1. *El reconvenido Ortiz y Márquez intercambiaron comunicaciones mediante "texto" con fechas del 23 al 30 de enero de 2023, coordinando una reunión en la Plazoleta de Plaza Carolina para el lunes, 30 de enero de 2023 a las 2:00 de la tarde. Véase Exhibit I, Minuta del 22 de enero de 2025, pág. 3.*
2. *El reconvenido Ortiz admitió en su contestación a interrogatorio #13 (Exhibit XII, pág. 2): "No recuerdo la fecha exacta, pero fue el Dr. Moreno quien me la presentó y ella en esa conversación fue que me hizo el acercamiento."*
3. *El reconvenido Ortiz contestó al requerimiento #4 sobre el 30 de enero 2023 (Exhibits XIII y XIV, pág. 2): "puedo*

---

[16] Entrada Núm. 108 del caso *CA2023CV01896* en SUMAC.
[17] Véase, Anejos de la Entrada Núm. 108 del caso *CA2023CV01896* en SUMAC.
[18] Entrada Núm. 116 del caso *CA2023CV01896* en SUMAC.
[19] Notificada el 27 de mayo de 2025. Entrada Núm. 118 del caso *CA2023CV01896* en SUMAC.
[20] Regla 36.3 (b) de las Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V., R. 36.3 (b).

*admitir que sostuve una reunión con ella en Plaza Carolina, en la cual estuvimos presente, la demandada, el novio de ella el Dr. Román y este servidor."*

4. *El reconvenido Ortiz contestó al requerimiento #7 y 8 sobre la reunión del 30 de enero de 2023 y el local #4 del edificio Vanessa a que se refiere el párrafo anterior (Exhibits XIII y XIV, pág. 2): "Si [sic], admito que se habló del local".*

5. *En esa reunión en Plaza Carolina, Ortiz Velázquez insistió en el valor de su palabra y las partes se comprometieron para que el local se utilizara por el término de dos (2) años, a razón de $800 mensuales, pendiente de otorgarse el contrato escrito (Exhibit XXI, párrafo #3).*

6. *El martes, 31 de enero de 2023 Márquez le informó su dirección postal y física al reconvenido Ortiz, a saber: "PO Box 13 Carolina, PR. Apart. #6 Edificio Luisa 55, C/Luisa, Condado, SJ." Véase Exhibit II, Minuta 22 enero 2025, pág. 3.*

10. *Aparte de un saludo con un número de teléfono de otra persona, no fue hasta el 6 de febrero de 2023 que el reconvenido Ortiz se volvió a comunicar con Márquez indicando: "Saludos[.] Estuve en el Hospital recluido. ¿Cómo va todo? Comunícate cuando puedas gracias." Véase Exhibit III, Minuta 22 enero 2025, pág. 3.*[21]

11. *La reconviniente Márquez incurrió en una inversión de recursos para habilitar el local desde que se tomó posesión en enero de 2023, con el conocimiento y consentimiento de Ortiz. Véase el intercambio de textos del 6 y 7 de febrero de 2023, Exhibit III, Minuta 22 enero 2025, pág. 3:*

    *"...Tgo [sic] planificado esta sem. [sic] trabajar el aire para poder arreglar las sillas dentales, etc etc. Mucho trab. [sic], pero poco a poco se puede..."Joaquín Ortiz Velázquez le indicó a Liza Márquez García que "...Ricardo persona que me ayuda si necesitas algo puedes llamarlo (939)289-6019 Joaco."*

12. *El trabajo en el acondicionador aire y las sillas dentales que se menciona en el párrafo anterior, que Márquez tuvo que pagar, ascendió a $2,885 y $550, respectivamente. Véase carta de 28 de junio de 2023 (Exhibit D, pág. 1), así como los talonarios de cheques del 2 y 8 de febrero de 2023, descripción del trabajo, estado de cuenta y recibos de pago (Exhibits XV hasta XX y juramento que se acompaña a esta moción, párrafo #6). Dicha carta obra en autos como Exhibit D de la Contestación a Demanda Enmendada y Reconvención (Entrada 22). La misma también se le envió a Ortiz por correo electrónico y también obra en autos, con la Oposición a Relevo de Rebeldía a Joaquín Ortiz Velázquez, pág. 3, párrafos #7 y 8 (Entrada 40).*

13. *El reconvenido Ortiz fue quien pospuso la primera reunión para otorgar el contrato, a pesar de que Ortiz repetidamente anunciaba verbalmente y por escrito que deseaba otorgarlo. Véase el intercambio de textos*

---

[21] Nótese que la numeración salta del 6 al 10, omitiendo el 7, 8 y 9.

del 25 al 28 de febrero de 2024, de que fue: *"Debido a que mi esposa está recluida en el hospital tendré que posponer la reunión de mañana." Exhibits V y VI, Minuta 22 enero 2025, pág. 3.*

14. *La reunión se llevó a cabo el 13 de marzo de 2023 (Exhibit XXI, párrafo #4 y Exhibit XII, pág. 2): "No recuerdo la fecha exacta, pero nos reunimos en la oficina de la Lcda. Rivera, este servidor, el Dr. Román, la demanda[da], en horas de la mañana."*

15. *En esa reunión del 13 de marzo de 2023, por primera vez se conversó sobre la posibilidad de Márquez formalizar una incorporación, así como obtener un seguro de arrendamiento, de responsabilidad pública y fianza (Exhibit XXI, párrafos #4 y 5). Véase específicamente la contestación a interrogatorio #14, sobre el párrafo #9 de su Demanda Enmendada: "Todo est[o] para poder realizar el contrato de arrendamiento." Exhibit XII, pág. 4.*

16. *No se había recibido hasta ese 13 de marzo de 2023, ni se les entregó por el reconvenido Ortiz entonces al Dr. Román ni a Márquez, un borrador del contrato que contemplaba el reconvenido Ortiz que se otorgara (Exhibit XXI, párrafo #5).*

17. *También el reconvenido Ortiz le informó a Márquez y al Dr. Román que habría de estar de vacaciones durante la Semana Santa que se conmemoró desde el domingo, 2 de abril al domingo, 9 de abril de 2023. Véase el juramento que se acompaña a esta moción, párrafo #2 y Exhibit XXI, párrafo #6.*

18. *El lunes, 10 de abril de 2023 ABC Sonrisas Corporación fue inscrita en el Departamento de Estado a un costo de $150, cuya certificación surge irrefutablemente de un registro público (Exhibits XXII y XXIII) y [https://rcp.estado.pr.gov/es](https://rcp.estado.pr.gov/es).*

19. *El jueves, 13 de abril de 2023 el reconvenido Ortiz envió un texto indicándole a Márquez: "Confirmando cita de mañana a las 8:30. Nos vemos en el edificio. Joaquín." Véase Exhibit VII, Minuta 22 enero 2025, pág. 3.*

20. *Ese mismo jueves, 13 de abril de 2023 Márquez le contestó mediante texto al reconvenido Ortiz: "Confirmada. Bnas noches!" Véase Exhibit VII, Minuta 22 enero 2025, pág. 3.*

21. *El lunes, 17 de abril de 2023 el reconvenido Ortiz le envió a Márquez un texto indicándole: "Acuérdate entregarme la copia de la llave. Tenemos que discutir contrato y finalizarlo. Saludos Joaquín." (negrillas nuestras) Véase Exhibit VII, Minuta 22 enero 2025, pág. 3.*

22. *Ese mismo día - lunes, 17 de abril de 2023- Márquez le contestó al reconvenido Ortiz: "Precisam... hoy mi FIANCEÉ habló con el bróker de él para el estimado, le dejo saber, gracias. [¿]Lo del sábado va?" (negrillas nuestras) Véase Exhibit VII, Minuta 22 enero 2025, pág. 3.*

23. *El martes, 18 de abril de 2023 el reconvenido Ortiz contestó que para el sábado, 22 de abril de 2023 se necesitaba la llave del local #4 del edificio Vanessa: "Lo*

del sábado Va por eso te estoy pidiendo copi[a] de la llave." Véase Exhibit XXI, párrafo #7, así como Exhibit VIII, Minuta 22 enero 2025, pág. 3.

24. La referencia del reconvenido Ortiz en dichos Exhibits VII y VIII a que necesitaba copia de la llave, era para un trabajo de electricidad en el local #4 del edificio Vanessa objeto del arrendamiento (Exhibit XXI, párrafo #7).

25. El miércoles, 19 de abril de 2023 se cursó por Márquez a la abogada del reconvenido Ortiz, el mensaje por correo electrónico que en sus últimos dos párrafos se indica:

"Ya he trabajado la incorporación y se envió el pago del seguro de responsabilidad pública.

"La fianza de renta no se ha podido tramitar, pues uno de los documentos que piden es el contrato de arrendamiento del local. A tales efecto[s], por este medio le solicito que nos envíe copia del contrato para poder estudiarlo con detenimiento antes de su firma.

"Agradezco su pronta atención a este asunto, ya que ambas partes estamos deseosas de firmar el mismo lo antes posible." Véase Exhibit IX, Minuta 22 enero 2025, pág. 3. También ese mismo día 19 de abril de 2023 Márquez le envió al reconvenido Ortiz el siguiente texto confirmando lo anterior: "Le envié un mensaje a la licenciada relacionado a la conversación que tuvimos hoy, explicándole las gestiones que se han realizado y las que faltan. Le pedí copia del contrato para leerlo y firmar cuando lo acordemos. Gracias." Véase Exhibit VIII, Minuta 22 enero 2025, pág. 3.

26. El jueves, 20 de abril de 2023 la abogada del reconvenido Ortiz le contestó a Márquez el mensaje por correo electrónico del día anterior, sin mencionar nada sobre el borrador del contrato que se le solicitó. Le requirió información sobre la corporación y sobre su presidente, así como una resolución corporativa. Véase Exhibit IX, Minuta 22 enero 2025, pág. 3.

27. Tampoco el viernes, 21 de abril de 2023 la abogada del reconvenido Ortiz mencionó nada sobre el borrador del contrato que se le solicitó, cuando le contestó a Márquez otro mensaje en la misma cadena por correo electrónico. Exhibit IX, Minuta 22 enero 2025, pág. 3.

28. El sábado, 22 de abril de 2023 el reconvenido Ortiz se presentó en el local arrendado según coordinado con el electricista, cuyo trabajo en el edificio le requería entrar al local. Sin embargo, al preguntársele por Márquez a nombre de quién se debía preparar el pago de la mensualidad, el reconvenido Ortiz indicó que su abogada se presentaría en unos minutos para ello. Véase el juramento que se acompaña a esta moción, párrafo #3.

29. El reconvenido Ortiz admitió lo siguiente en su Réplica a Reconvención, pág. 2, párrafo #6: "Se acepta el inciso sexto." La reconvención de Márquez que replicó Ortiz, alegó en ese párrafo #6, pág. 7 lo siguiente: "La reconviniente le pagó a la reconvenida los cánones correspondientes a los meses de febrero, marzo, abril,

*mayo y junio de 2023. El mes de junio fue devuelto por el correo sin reclamar."*

30. *Los referidos cánones correspondientes a los meses de febrero, marzo y abril ascendieron a $2,400, a razón de $800 por mes. Véase el cheque fechado ese mismo sábado, 22 de abril y cobrado por Ortiz el lunes, 24 de abril de 2024 (Exhibit XXIV).*

31. *A pesar de que se desconocía por Márquez que la abogada de Ortiz se presentaría ese mismo sábado, 22 de abril de 2023 coordinado para el trabajo del electricista, tampoco entregó ella ni el reconvenido Ortiz el borrador de contrato, por lo que continuó el arrendamiento verbal de mes a mes. Véase el juramento que se acompaña a esta moción, párrafo #4.*

32. *El viernes, 28 de abril de 2023 Márquez le envió al reconvenido Ortiz el siguiente texto: "Saludos! Liza Márquez, ayer recibí de parte de Iván Álvarez agente de seguros la póliza de responsabilidad pública. Buen día!" Véase Exhibit VIII, Minuta 22 enero 2025, pág. 3.*

33. *El martes, 1 de mayo de 2024 el reconvenido Ortiz, por conducto de su abogada, brindó por teléfono la dirección postal a donde se le envió la mensualidad por el arrendamiento. Véase Exhibit XXI, párrafo #8, juramento que se acompaña a esta moción, párrafo #5, así como Exhibit XXV (pago correo certificado 1 may 2023) y Exhibit XXVI (carta incluida confirmando lo anterior).*

34. *En dicha carta del l de mayo de 2023 se le reiteró por Márquez al reconvenido Ortiz (Exhibit XXVI): "Reitero nuevamente, si fuera posible nos envíe el contrato para poder familiarizarnos con él, antes de la firma del mismo. Gracias."*

35. *No fue hasta el 2 de mayo de 2023 que el reconvenido Ortiz renegó de su propia confirmación al arrendamiento justo el día anterior por conducto de su abogada. De hecho, admitió que no requirió el retiro de equipo alguno en el mensaje por correo electrónico como en el texto al cual aludió. Véase contestación al requerimiento #39 (Exhibits XIII y XIV, págs. 7 y 4, respectivamente).*

36. *El reconvenido Ortiz también admitió que nunca le entregó a Márquez, al Dr. José Ángel Román Díaz ni a nadie que representara a esas dos personas, ningún borrador o contrato de arrendamiento escrito con respecto al local #4 del Edificio Vanessa. Véase la contestación al requerimiento #36 (Exhibits XIII y XIV, págs. 6-7 y 4, respectivamente).*

38. *El 15 de mayo de 2023 se le comunicó por escrito al reconvenido Ortiz el más decidido repudio de la reconviniente Márquez a su comportamiento desleal. Véase la referida carta del 15 de mayo como Exhibit F de la Reconvención que obra en autos, párrafo #8, págs. 7-8.[22]*

39. *Se le ofreció entonces al reconvenido Ortiz dejar atrás ese desagradable incidente y que la reconviniente Márquez no tenía reparo, ya que Ortiz nunca envió el*

---

[22] Nótese que la numeración salta del 36 al 38, omitiendo el 37.

*borrador de contrato que tanto anunció, a que se utilizara uno similar al del Dr. Moreno. Id.*

40. *El 28 de junio de 2023, agotados los esfuerzos de la reconviniente Márquez para otorgar el contrato escrito en los términos pactados desde enero 2023, se le enviaron al reconvenido Ortiz por correo certificado las llaves del local como señal de la resolución de los mismos por culpa de Ortiz. Véase la carta del 28 de junio de 2023 a la abogada de Ortiz, pág. 1 que obra en autos como Exhibit D de la Contestación a Demanda Enmendada y Reconvención (Entrada 22).*

41. *Se le reclamó por escrito a Ortiz por Márquez en dicho Exhibit D, pág. 1 la cantidad de $30,582.26 por los daños causados por su incumplimiento, a saber:*

| | |
|---|---|
| *Venta Oficina Dental Dr. Moreno* | *$ 12,000* |
| *Acondicionador de Aire* | *2,885* |
| *Tel. Claro* | *76.59* |
| *Reparación Equipo Dental* | *400* |
| *Tapicería Equipo Dental* | *150* |
| *Incorporación* | *150* |
| *Sello Corporativo* | *78.50* |
| *Seguro Responsabilidad Publica* | *450* |
| *Renta Feb, Mar, Abr* | *2,400* |
| *Renta Mayo* | *800* |
| *Tel. Claro* | *71.33* |
| *Luma* | *24.44* |
| *USPS-Gastos Correo* | *76.80* |
| *Renta Junio* | *800* |
| *Limpieza Equipo Dental* | *20* |
| *Otros* | *2,000* |
| | *$22,382.26* |

43. *Se incluyeron en los daños, la pérdida de un local y la consiguiente búsqueda de otro que se valora razonablemente en $3,200 por no menos de cuatro (4) meses de retraso para la operación contemplada. Igualmente incluyen $5,000 por el daño sufrido por haber confiado en la celebración válida del contrato, Id., pág. 2.[23]*

44. *Finalmente, ese 28 de junio de 2023 se le advirtió por escrito a Ortiz por Márquez, que de no recibirse el pago dentro de los próximos treinta (30) días, Márquez habría de tomar las acciones legales que entendiera pertinentes, Id., pág. 2.]*

45. *Así se malogró lo que desde octubre de 2022 el Dr. Román Díaz y Márquez conversaron con el Dr. Javier Ortiz Cervera, contemplando ampliar una práctica dental cercana al área de Carolina, PR. El Dr. Ortiz les indicó que tenía planes de retirarse y por lo tanto su oficina de Isla Verde estaría disponible para la venta en $125,000. Véase Exhibit XXVII, declaración jurada del Dr. Javier Ortiz Cervera, 2 de septiembre de 2024.*

46. *Luego de varias semanas de esa comunicación, el Dr. Román Díaz y Márquez le indicaron que se les había presentado una oportunidad que estarían aprovechando. Sin embargo, al cabo de unos meses, el Dr. Román Díaz y Liza Márquez le indicaron que*

[23] Nótese que la numeración salta del 41 al 43, omitiendo el 42.

*estaban teniendo problemas, específicamente una controversia con el alquiler del local, por lo que les reiteró la misma oferta de venta de su oficina Id.*

Además, el TPI determinó que los siguientes **hechos estaban en controversia**:

1. *Determinar si las partes formalizaron un contrato de arrendamiento.*
2. *De haberse otorgado un contrato, determinar si las partes lo cumplieron.*
3. *De no haberse otorgado un contrato, determinar si las actuaciones de las partes durante las negociaciones precontractuales ocasionaron daños a parte contraria.*
4. *De haber responsabilidad precontractual (culpa in contrahendo), determinar los daños que se ocasionaron.*[24]

Ante ello, declaró *no ha lugar* la moción de sentencia sumaria y ordenó la continuación de los procesos.[25]

Inconforme, el **26 de junio de 2025** la señora Márquez García recurrió ante nos y señaló el siguiente error:

*ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NEGARSE A DICTAR SENTENCIA SUMARIAMENTE, A PESAR DE HABER DETERMINADO NO MENOS DE 42 DE LOS HECHOS ESENCIALES Y PERTINENTES QUE COMO CUESTIÓN DE DERECHO REQUIEREN DICTARLA POR LA "VIOLACIÓN A LOS DEBERES DE CONDUCTA EXIGIDOS DURANTE LA ETAPA PRECONTRACTUAL.*

De su parte, el **4 de agosto de 2025** compareció el señor Ortiz Velázquez y la Sra. Myriam Velázquez Hernández mediante *"ALEGATO EN OPOSICIÓN"*. Con la comparecencia de las partes, dimos por perfeccionado el *certiorari* para la consideración del Panel Especial.

**-II-**

**-A-**

El auto de *certiorari* es un medio procesal de carácter discrecional, que a su vez, permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[26] Así, se

---

[24] Entrada Núm. 118 del caso *CA2023CV01896* en SUMAC.
[25] *Íd.*
[26] *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 711 (2019); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337 – 338 (2012).

entiende por discreción como el poder para decidir en una forma u otra; esto es, para escoger entre uno o varios cursos de acción.[27]

Por ello, la Regla 52.1 de Procedimiento Civil, delimita las instancias en que habremos de atender —*vía certiorari*— las resoluciones y órdenes emitidas por los tribunales de instancia:

> *[E]l recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.* [...].[28]

Bajo el carácter de discrecionalidad, la Regla 40 del Reglamento de este Tribunal de Apelaciones establece los siguientes criterios para mostrar causa o para la expedición del auto de *certiorari:*

> (A) *Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*
> (B) *Si la situación de hechos planteada es la más indicada para el análisis del problema.*
> (C) *Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*
> (D) *Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*
> (E) *Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
> (F) *Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*
> (G) *Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*[29]

En consecuencia, el Tribunal Supremo de Puerto Rico ha dispuesto que:

---

[27] *García v. Asociación*, 165 DPR 311, 321 (2005).
[28] Regla 52.1 de las Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V., R. 52.1. *Énfasis nuestro.*
[29] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62 – 63, 215 DPR __ (2025).

*[d]e ordinario, no se intervendrá con el ejercicio de discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.*[30]

De manera, que si la actuación del foro recurrido no está desprovista de base razonable —ni perjudica los derechos sustanciales de las partes— deberá prevalecer el criterio del juez de instancia a quien le corresponde la dirección del proceso.[31]

**-B-**

El mecanismo de sentencia sumaria procura, ante todo, aligerar la tramitación de aquellos casos en los cuales no existe una controversia de hechos real y sustancial que exija la celebración de un juicio en su fondo.[32] Al respecto, es la Regla 36 de Procedimiento Civil la que regula el proceso mediante el cual cualquiera de las partes en un pleito puede solicitar al tribunal que dicte sentencia sumaria a su favor.[33] Así, cuando cualquier parte reclamante solicite que el pleito sea resuelto por la vía sumaria, deberá demostrar en su solicitud, *"la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación".*[34]

De modo que el criterio rector al momento de considerar la procedencia de un dictamen sumario es que no haya controversia sobre los hechos esenciales y pertinentes, según alegados por las partes en sus respectivas solicitudes y/u oposiciones, y que sólo reste aplicar el derecho.[35] Los jueces no están limitados por los hechos o documentos evidenciarlos que se aduzcan en la solicitud

---

[30] *Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[31] *SLG Zapata- Rivera v. JF Montalvo*, 189 DPR 414, 434 – 435 (2013).
[32] *Rodríguez García v. UCA*, 200 DPR 929 (2018).
[33] 32 LPRA Ap. V, R. 36.
[34] 32 LPRA Ap. V. R. 36.1 y 36.2.
[35] *Velázquez Ortiz v. Mun. de Humacao,* 197 DPR 656, 661 (2017).

de sentencia sumaria. Deben considerar todos los documentos en autos, sean o no parte de la solicitud, de los cuales surjan *admisiones* hechas por las partes.[36] La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada solo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor.[37]

Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria.[38] Quiere decir que, en ausencia de una controversia de hechos materiales discernible, corresponderá a los tribunales aplicar el derecho y resolver conforme al mismo.[39]

En cambio, el TPI no deberá dictar sentencia sumaria cuando: **(1)** existen hechos materiales controvertidos; **(2)** hay alegaciones afirmativas en la demanda que no han sido refutadas; **(3)** surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; y **(4)** como cuestión de derecho no procede.[40]

Por otra parte, es menester señalar que al ejercer nuestra función revisora sobre decisiones en las que se aprueba o deniega una solicitud de sentencia sumaria, nos encontramos en la misma posición que los foros de primera instancia.[41] Siendo la revisión una de *novo*, debemos ceñirnos a los mismos criterios y reglas que nuestro ordenamiento les impone a estos, y debemos constatar que los escritos de las partes cumplan con los requisitos codificados en

---

[36] *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004).
[37] *Velázquez Ortiz v. Mun. de Humacao, supra.*
[38] *Id.*
[39] *Rodríguez García v. UCA*, supra.
[40] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, 2021 TSPR 149, 208 DPR ___ (2021).
[41] *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020); *González Santiago v. Baxter Healthcare,* 202 DPR 281, 291 (2019).

la Regla 36 de Procedimiento Civil, *supra*.[42] A tenor con lo expuesto, el Tribunal Supremo de P.R., ha pautado lo siguiente:

> *[E]l Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. [...].*
>
> *[Por el contrario], de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.*[43]

Desde luego, el alcance de nuestra función apelativa al intervenir en estos casos no comprenderá la consideración de prueba que no fue presentada ante el foro de primera instancia, ni la adjudicación de hechos materiales en controversia.[44]

### -III-

En síntesis, la peticionaria plantea que el TPI incidió al negarse a disponer del caso sumariamente, a pesar haber determinado 42 hechos esenciales y pertinentes, que como cuestión de derecho requieren dicha determinación por la violación a los deberes de conducta exigidos durante la etapa precontractual.

Un revisión de *novo* de la *Resolución Interlocutoria* recurrida, nos conduce a concluir que el TPI actuó razonablemente al declarar *No Ha Lugar* la solicitud de sentencia sumaria presentada por la peticionaria y ordenar la continuación de los procesos.

Adoptamos —tanto los hechos esenciales incontrovertidas como los que están en controversia— que obran en la referida resolución. Es decir, concurrimos con el TPI al resolver que existen hechos materiales que están en controversia e impiden disponer del caso por la vía sumaria.

Por lo tanto, aunque estamos ante una moción de carácter dispositiva de las contempladas en la referida Regla 52.1 de

---

[42] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118 (2015).
[43] *Id.*, págs. 118-119.
[44] *Id.*

Procedimiento Civil, resolvemos que no hay prueba en el expediente tendente a demostrar que el TPI abusó de su discreción o actuó con perjuicio, parcialidad o error manifiesto. Tampoco, el presente caso presenta un fracaso irremediable de la justicia al esperar que el TPI celebre una vista que dilucide los hechos en controversia, y en consecuencia, la parte afectada acuda ante nos en apelación.

En el ejercicio de la discreción que nos permite la citada Regla 40 del Reglamento del Tribunal Apelaciones, no intervendremos con la determinación recurrida.

**-IV-**

Por los fundamentos antes expuestos, **denegamos** la expedición del auto de *certiorari* solicitado.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones